# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

## CIVIL CASE NO. 1:07cv86

| | |
|---|---|
| **STEVEN MOCK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | <u>**MEMORANDUM OF**</u> |
| **vs.** ) | <u>**DECISION AND ORDER**</u> |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

_____

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Judgment on the Pleadings [Doc. 13] and the Defendant's Motion for

Summary Judgment [Doc. 15].

## PROCEDURAL HISTORY

The Plaintiff Steven Mock filed an application for a Period of

Disability, Social Security Disability Insurance Benefits, and Supplemental

Security Income on November 24, 2003, alleging that he had become

disabled as of October 16, 2003.  [Transcript ("Tr.") 41, 42-44].  The

Plaintiff's claim was denied initially [Tr. 30, 32-35, 98-105] and on reconsideration. [Tr. 31, 37-39, 106]. The Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on August 11, 2006. [Tr. 271-306]. The Plaintiff was represented by counsel and testified at this proceeding, as did a Vocational Expert. On August 24, 2006, the ALJ issued a decision, in which he found that the Plaintiff was not disabled. [Tr. 13-24].

The Plaintiff requested a review of the hearing by the Appeals Council and submitted additional evidence in support of his request. [Tr. 12]. The Appeals Council accepted the additional evidence and made it part of the record [Tr. 255-70], but denied the Plaintiff's request for review, finding that this additional evidence did not provide a basis for changing the ALJ's decision. [Tr. 5-7]. This civil action followed. [Doc. 2].

## STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct

legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Court does not review a final decision of the Commissioner de novo.

Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§404.1520, 416.920.  Second, the applicant must show a severe impairment.  If the applicant does not show any impairment or combination thereof which significantly limits the physical or mental ability to perform work activities, then no severe impairment is shown and the applicant is not disabled.  <u>Id.</u>  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the applicant is disabled regardless of age, education or work experience.  <u>Id.</u>  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  <u>Id.</u>  Fifth, if the claimant

has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fifth step.

## FACTS AS STATED IN THE RECORD

The Plaintiff was born on January 14, 1955 and was 48 years old on the alleged onset of disability date. [Tr. 277]. He completed high school and has an associate's degree in criminal justice. [Tr. 277]. He was last employed in a warehouse, where he was required to lift between 20 and 80 pounds. [Tr. 278]. The Plaintiff was laid off from his previous job as a machine operator and before that, had been employed for 25 years as a maintenance mechanic. [Tr. 280]. Both of these jobs required lifting in excess of 50 pounds. [Tr. 279, 280].

The Plaintiff was hospitalized in October 2003 after he had a heart attack. After a cardiac catheterization revealed severe coronary artery disease, he underwent four vessel coronary artery bypass grafting. [Tr. 131-56]. The medical records indicate that he was doing well at the time of

his discharge a week later. [Tr. 132]. The Plaintiff's cardiovascular surgeon, Dr. R. Mark Stiegel, noted that the Plaintiff's prognosis was excellent and that his exercise tolerance was good. [Tr. 157]. When the Plaintiff was treated by a family physician in December 2003, less than two months after the procedure, the Plaintiff denied having any chest pain or swelling. [Tr. 113].

The Plaintiff underwent a consultative examination by Dr. Shana D. James in January 2004. The Plaintiff told Dr. James that he walked one and a half miles a day for exercise, and he denied any chest pain or shortness of breath during this activity. He reported occasional chest pain which was worse with coughing, sneezing, and some sleeping positions. His cardiovascular examination was within normal limits. He reported intermittent swelling in his right leg when he stood or walked for a long period of time, and Dr. James found a trace 2+ pretibial edema in his right lower leg. The Plaintiff reported that he did not do any yard work, but that his daily activities included cooking, mopping, and vacuuming. While he reported intermittent numbness and tingling in his hand, Dr. James noted that he had full grip strength in both hands and full muscle strength in all extremities. [Tr. 158-63].

The medical records show that the Plaintiff reported occasional chest pain to his family physician, Dr. C.P. Whitworth. [Tr. 164, 166, 191]. In February 2004, his chest pain was assessed as probable sternotomy strain due to his bypass surgery. [Tr. 164]. In April 2004, Dr. Whitworth noted that the Plaintiff had some soreness in his chest mainly when he moved around. [Tr. 166]. Dr. Whitworth noted in April 2004 that the Plaintiff was applying for disability, but he did not list any work restrictions or offer any comments to support the Plaintiff's disability claim. [Tr. 165]. An echocardiogram performed on June 28, 2004 revealed preserved left ventricular functioning with an ejection fraction of 55%. [Tr. 175]. A stress test performed at that time revealed that the Plaintiff had good exercise tolerance and had no evidence of ischemia. [Tr. 176]. In March 2005, the Plaintiff reported having chest pain, which he described as "a heavy type of feeling" but with no arm pain, swelling or shortness of breath. Dr. Whitworth referred him to a cardiologist. He also reported having dizzy headedness at that time. [Tr. 202]. When he returned to see Dr. Whitworth in May 2005, he denied any dizziness and reported only occasional chest pains. [Tr. 212]. Dr. Whitworth noted in January 2006

that the Plaintiff's chest pain was "episodic" and in July 2006 that it was "rare." [Tr. 222, 231].

When the Plaintiff was evaluated by cardiologist Theodore Frank, M.D. in April 2005, he reported a several month history of a pressure sensation in his chest, which occurred sporadically and relieved spontaneously within 15 to 30 minutes. He also reported experiencing palpitations primarily at night, with no associated syncope or near syncope. A pharmological stress test showed some anterolateral and apical ischemia. [Tr. 177]. A cardiac catheterization performed on April 7, 2005 revealed that one artery was occluded but his other grafts were patent. [Tr. 242-43]. The Plaintiff was subsequently treated with medication. When he returned to the cardiologist in May 2005, he reported he was doing much better with no significant angina or chest pain symptoms. [Tr. 180-81]. At a follow-up exam in October 2005 with cardiologist Rachel Keever, M.D., the Plaintiff reported he had chest pain "occurring daily or perhaps as little as once per week," but that he had not used any sublingual nitroglycerin. At that time, Dr. Keever noted that the Plaintiff had been out of work for two years and was applying for disability; however, no work related restrictions were imposed. [Tr. 183-84]. In April

2006, Dr. Keever noted that the Plaintiff continued to have sporadic atypical chest pain symptoms, but that the Plaintiff had not felt the need to use nitroglycerin for them. The Plaintiff denied any significant shortness of breath but did report occasional infrequent swelling of his legs. [Tr. 185-86]. Cardiology examinations in April 2005, May 2005, October 2005, and April 2006 revealed no swelling in his lower extremities. [Tr. 178, 180, 183, 185].

The Plaintiff also has a history of non-insulin dependent diabetes mellitus. [Tr. 111]. Lab tests performed in April 2004 revealed a hemoglobin A1C level of 6.6%, yielding an average blood sugar level of 144. [Tr. 171]. The Plaintiff's blood sugar levels generally have been well controlled with medication. [Tr. 190-232]. An eye examination revealed no evidence of diabetic retinopathy. [Tr. 187-90].

Following a sleep study in March 2005, the Plaintiff was diagnosed with severe obstructive sleep apnea, for which he was prescribed a C-Pap machine. [Tr. 210-11].

The medical records also reveal that the Plaintiff has had intermittent musculoskeletal pain which has responded to treatment with medication. In January 2004, Dr. James noted that the Plaintiff had a full range of

motion in his shoulders, elbows, wrists, and other joints and had full grip strength, normal dexterity, and full muscle strength in his arms and legs. [Tr. 160]. In April 2004, the Plaintiff told his family physician that he had some back and shoulder pain, but the examination revealed full muscle strengths and no sensory deficits. [Tr. 166]. In December 2004, the Plaintiff was treated by his family physician for pain in his left elbow. [Tr. 201]. He was referred to an orthopedic physician. X-rays revealed arthritis in the left elbow. The Plaintiff was treated with nonsteroidal anti-inflammatory medication and was advised to return for further treatment. [Tr. 252]. The Plaintiff returned to the orthopedic physician in April 2005 with complaints of pain in his right shoulder. The Plaintiff, however, did not have any further complaints about pain in his left elbow. X-rays of his shoulder were normal. [Tr. 252]. The Plaintiff reported significant relief when he returned to his orthopedic physician in May 2005. [Tr. 253]. In November 2005, he was treated for left knee pain and was advised to return in three weeks for further treatment. A MRI revealed no obvious meniscal damage, no obvious arthritic changes, and no swelling or contusions. The medical records reflect that the Plaintiff canceled his follow-up appointment, stating that his knee was fine. [Tr. 253]. An

examination by his family physician in December 2005 revealed that all of his extremities were normal.  [Tr. 221].

The Plaintiff is approximately six feet tall, and the records reveal that his weight has increased from 230 to approximately 270 pounds since his heart attack.  Dr. Whitworth described him as obese.  [Tr. 167, 222].  The Dr. Keever and Dr. James described the Plaintiff as "well-nourished" and "well developed," although Dr. Keever did recommend that he lose weight and increase his activity as part of his risk factor modification.  [Tr. 159, 178, 186].  The Plaintiff's treatment records indicate that he had reported occasional back pain and repeatedly denied any shortness of breath. While his family physicians encouraged him to lose weight, they did not impose any functional restrictions related to his obesity.  [Tr. 190-232]. The treatment records further show that the Plaintiff consistently had full muscle strength and a good range of motion. [Tr. 158-63, 164-73, 190-232].

The Plaintiff testified at the ALJ hearing that he has had abdominal pain and intestinal bleeding, and that he was scheduled for a colonoscopy in September 2006, one month after the hearing.  [Tr. 287-88].  The medical records from his family physician show that the Plaintiff has a

history of hemorrhoidal bleeding. [Tr. 166]. A colonoscopy performed in September 2004 revealed polyps, which were removed. [Tr. 233]. In April 2006, the Plaintiff was treated for abdominal pain, which was diagnosed as constipation and diverticulitis. [Tr. 224]. In June 2006, Dr. Whitworth referred the Plaintiff for another colonoscopy because of a history of rectal bleeding, assessed as most likely hemorrhoidal. [Tr. 228].

While the Plaintiff did not list any mental problems as disabling impairments on his disability report, he testified at the ALJ hearing that he has a significant problem with depression and anxiety. [Tr. 289, 294]. He testified that he takes Zoloft but does not receive any mental health counseling. [Tr. 289-90]. The medical records show that the Plaintiff occasionally takes anti-depressant medication for situational depression. [Tr. 166, 190].

The Plaintiff's records were examined by two State agency medical consultants, who determined that the Plaintiff would regain the capacity for medium work within 12 months after his heart attack. They found that he can sit, stand or walk for about six hours in a work day, can push and pull, can lift and carry 50 pounds occasionally and 25 pounds frequently, has no postural or manipulative limitations, and has no environmental limitations

other than an avoidance of concentrated exposure to hazards.  [Tr. 98-111].

The Plaintiff testified that his heart condition is his worst handicap. He testified that he continues to have intermittent chest pain after his bypass procedure.  He rated his chest pain at a 5 to 6 on a scale of 1 to 10, with occasional sharp pain that scares him.  [Tr. 281].  The Plaintiff takes nitroglycerin as needed, and reported that his heart races occasionally.  The Plaintiff testified that his doctor told him to sit and relax when this occurs.  [Tr. 282].  The Plaintiff also has fatigue, and he reports walking less now than he did just after surgery.  [Tr. 283, 290].  The Plaintiff testified that his sleep apnea affects his heart condition.  He stated that he uses the C-Pap machine at night, and that he sleeps about six hours with the use of the machine and medication, and that he lies down every day because of fatigue.  [Tr. 284-85, 288].

The Plaintiff testified that he has numbness in his right leg at the harvest site for his bypass, that he has swelling and sometimes severe pain in his leg and ankles, and that he sits with his legs elevated to relieve this.  [Tr. 286-87].  The Plaintiff reported that dizziness, sleepiness, and drowsiness are side effects from his medication, and that he has dizziness

and vertigo at least once a week. [Tr. 288-89]. He said that he would work if he could but his pace has slowed and his concentration is diminished, and thus he could not work a full eight-hour day. [Tr. 294-95].

With respect to activities of daily living, the Plaintiff testified that he lives in a house, that his 12-year-old daughter lives with him but stays with her grandparents during the summer, and that a cousin comes over and assists him with his household chores. [Tr. 292, 295]. The Plaintiff testified that he is able to care for his personal needs, and while he does not cook, he is able to make sandwiches. [Tr. 292]. The Plaintiff does not do any yard work. He does not socialize, although he attends church regularly. [Tr. 293]. The Plaintiff has a driver's license and drives about once a week, but is limited by the effects of his medication and fatigue. [Tr. 276-77]. The Plaintiff testified that his doctors have advised him to avoid exertion and to not lift more than 50 pounds occasionally. [Tr. 291]. The Plaintiff reported that his legs swell when he stands, and that he has difficulty bending and squatting. [Tr. 291-92]. He tries to walk if he is not too fatigued or depressed, although he has to rest after walking for a quarter of a mile. [Tr. 290].

## THE ALJ'S DECISION

On August 24, 2006, the ALJ issued a decision denying the Plaintiff's claim. [Tr. 35-44]. Using the five-step sequential evaluation process promulgated by the Social Security Administration, see 20 C.F.R. §§404.1520, 416.920, the ALJ made the following findings. At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since October 13, 2003, the alleged onset date of disability. [Tr. 17]. At step two, the ALJ found that the Plaintiff has the following severe impairments: coronary artery disease, status post myocardial infarction and coronary artery bypass grafting; diabetes mellitus; and sleep apnea. [Tr. 17]. While the ALJ noted that the Plaintiff has been treated for a number of other problems (musculoskeletal problems, obesity, abdominal pain and intestinal bleeding, and depression), the ALJ found that none of these conditions constituted "severe" impairments. [Tr. 18-19]. At step three, the ALJ concluded that none of the Plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically noting that the Plaintiff's "coronary artery disease does not manifest the signs, symptoms, and findings required to meet the requirements of Listings 4.02 or 4.04." [Tr. 19].

Proceeding to step four, the ALJ determined the Plaintiff has the residual functional capacity to perform physical and mental work activities on a sustained basis despite limitations from his impairments. While finding that the Plaintiff's "medically determinable impairments...could reasonably be expected to produce the alleged symptoms," the ALJ concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 20]. Specifically, the ALJ found the Plaintiff's testimony credible to the extent that the Plaintiff testified that he cannot perform the heavy lifting and other strenuous activities required of his past work. The ALJ found the Plaintiff's testimony not credible to the extent that his testimony regarding his symptoms and limitations was not consistent with his own statements to his treating and examining physicians, as none of the medical reports contained in the record contain complaints of symptoms to the extent alleged by the Plaintiff. [Tr. 20].

Because the ALJ found the Plaintiff's testimony was not fully credible, he gave more weight to the medical treatment records and opinion evidence in determining the Plaintiff's residual functional capacity. [Tr. 22]. Considering all of the Plaintiff's impairments, the ALJ concluded that the

Plaintiff has the residual functional capacity to perform light work with the following nonexertional limitations: no concentrated exposure to hazards such as moving machinery or to pulmonary irritants such as dust and fumes; a sit/stand option which would allow him to shift positions occasionally; and a non-production work setting. [Tr. 19]. The ALJ went on to find that the Plaintiff is unable to perform any past relevant work; that he is a "younger individual" who is approaching advanced age beginning in January 2005; and that he has at least a high school education. [Tr. 23]. Finally, at step five of the sequential process, and based upon the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [Tr. 23-24]. Accordingly, the ALJ concluded that the Plaintiff has not been under a "disability" as defined by the Social Security Act from October 13, 2003 through the date of the decision, August 24, 2006. [Tr. 24].

## Additional Evidence Presented to the Appeals Council

In support of his request for review, the Plaintiff submitted additional evidence to the Appeals Council, including a Certification of Disability

17

under N.C. Gen. Stat. §105-277.1 for Partial Ad Valorem Tax Exclusion, in which the Plaintiff's physician, Dr. Whitworth opines that the Plaintiff meets the definition of "totally and permanently disabled" as defined by North Carolina law [Tr. 256]; a letter from Dr. Whitworth dated October 3, 2006, in which Dr. Whitworth opines that the Plaintiff "is disabled from working any job due to his coronary artery disease, elevated cholesterol, diabetes, obstructive sleep apnea and morbid obesity" [Tr. 257]; records from Plaintiff's cardiologist Dr. Keever, indicating that a echocardiogram performed on October 10, 2006 revealed a mildly reduced ejection fraction with impaired left ventricular relaxation, concentric left ventricular hypertrophy, and some enlarging of his heart, probably secondary to chronic blockage of that vessel.  Dr. Keever notes that a stress test performed on October 10, 2006 indicated an inducible ischemia in an area that would be consistent with that known blockage.  Dr. Keever opines that the blockage is not amenable to additional angioplasty and that fixing it likely require additional open-heart surgery; however, she notes that the Plaintiff's "symptoms would have to be substantially worse for any cardiothoracic surgeon to consider that option."  Dr. Keever further notes that the Plaintiff experienced chest pain during the stress test, and that he

was unable to perform a treadmill stress test because of chronic knee pain. [Tr. 258-62].

## DISCUSSION

The Plaintiff raises three assignments of error on appeal.  First, the Plaintiff contends that the ALJ did not give a valid explanation of the evaluation of the Plaintiff's credibility testimony.  Second, the Plaintiff argues that the ALJ did not discuss the effect of the Plaintiff's severe and non-severe impairments in combination.  Finally, the Plaintiff argues that the ALJ failed properly to consider obesity as an impairment in the disability determination process.  The Court will address each assignment of error *seriatim*.

The Plaintiff first argues that the ALJ improperly found that his subjective complaints were not fully credible.  Specifically, the Plaintiff contends that the ALJ did not assess his credibility in the manner required by Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).  He further challenges the ALJ's reliance on certain objective medical evidence in concluding that the Plaintiff's subjective complaints were not entirely credible, and he argues

that the ALJ ignored certain evidence which was consistent with the Plaintiff's subjective complaints.  [Doc. 14 at 4-12].

In Craig, the Fourth Circuit held that, in assessing a claimant's credibility, an ALJ must first determine whether the objective medical evidence demonstrates the existence of a medically determinable impairment that could reasonably cause the alleged pain or other symptom.  Id.  "[O]nce a medically determinable impairment which could reasonably be expected to produce the pain alleged by the claimant is shown by objective evidence, the claimant's allegations as to the severity and persistence of [his] pain may not be dismissed merely because objective evidence of the pain itself [is] not present to corroborate the existence of pain."  Id. at 595; Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986).  The Fourth Circuit cautioned, however, that subjective complaints of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."  Craig, 76 F.3d at 595.

In the present case, the ALJ properly made the threshold determination required by Craig, namely, that the Plaintiff has medically determinable impairments which could reasonably be expected to produce the alleged symptoms. [See Tr. 20]. The ALJ found, however, that the Plaintiff's testimony regarding his alleged symptoms was not credible because his testimony regarding his symptoms and limitations was not consistent with his own statements to his treating and examining physicians. [Tr. 20]. There is substantial evidence to support the ALJ's decision in this regard. With respect to the Plaintiff's complaint of consistent, sharp chest pain, there is substantial evidence in the medical records to support the ALJ's finding that the Plaintiff reported only occasional chest pain. [Tr. 164, 166, 191, 177, 180-81, 212, 222, 231]. Further, although the Plaintiff was prescribed nitroglycerine for chest pain symptoms, he rarely felt the need to take it. [Tr. 185-86]. While the Plaintiff appears to argue that nitroglycerine was ineffectual in alleviating his chest pain [Doc. 14 at 7 ("Medically, the need to take nitroglycerine is not a proxy for angina....")], he acknowledged at the ALJ hearing that he could take nitroglycerine "if it gets bad enough." [Tr. 282]. Further, although the Plaintiff showed signs of ischemia and required a

catheterization in April 2005, he reported no chest pain one month following this procedure.  [Tr. 180-81].

The Plaintiff also testified regarding his subjective complaints of elbow and knee pain and leg swelling.  There is substantial evidence, however, that the Plaintiff's elbow and knee pain was alleviated by medication and treatment.  [Tr. 252-53, 221].  Further, repeated examinations revealed no swelling in his lower extremities.  [Tr. 178, 180, 183, 185].

Further, the ALJ's finding that the Plaintiff's testimony regarding his functional limitations was not consistent with his reports to the examining physician regarding his daily activities is supported by substantial evidence.  During the consultative examination in January 2004, the Plaintiff reported that he walked one and a half miles a day for exercise, and he denied any chest pain or shortness of breath during this activity. The Plaintiff further reported that his daily activities included cooking, mopping, and vacuuming.  While PLaintiff reported intermittent numbness and tingling in his hand, Dr. James noted that he had full grip strength in both hands and full muscle strength in all extremities.  [Tr. 158-63].

For all these reasons, the Court concludes that there is substantial evidence to support the ALJ's credibility determination in this case. The Plaintiff's first assignment of error is overruled.

Next, the Plaintiff argues that the ALJ failed to address the effect of the Plaintiff's impairments in combination, as required by 20 C.F.R. §§404.1523 and 416.923. Specifically, he argues that the ALJ failed to discuss the Plaintiff's obesity, anxiety and depression, and other "non-severe" impairments in discussing his rationale for his finding of the Plaintiff's residual functional capacity. [Doc. 14 at 12-13].

When a claimant has multiple impairments, the ALJ is required to consider the combined effect of those impairments in determining whether the claimant has a disability. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The Court is satisfied that the ALJ did so in this case. The ALJ determined that the Plaintiff suffers from several impairments, including obesity, depression, hemorrhoidal bleeding, and arthritis, but concluded that none of these impairments results in any functional limitations or interfered with the Plaintiff's ability to perform basic work activities. [Tr. 18-19]. There is substantial evidence to support the ALJ's finding in this regard. As the ALJ noted, the medical records do not support a finding

that the Plaintiff's obesity resulted in any functional limitations. The treatment records show that he reported only occasional back pain and repeatedly denied shortness of breath. [Tr. 190-232]. While Dr. Whitworth encouraged him to lose weight, he did not impose any functional restrictions on the Plaintiff. Further, repeated examinations showed that he had full muscle strength and good range of motion. [Tr. 158-63, 164-73, 190-232]. The ALJ further found that the Plaintiff's hemorrhoidal bleeding and arthritis did not interfere with the Plaintiff's ability to perform basic work activities, and the medical record supports this finding. [Tr. 19]. Finally, the Plaintiff reported some depression and anxiety, for which he was prescribed anti-depressants. He reported taking this medication only occasionally, and he did not pursue mental health counseling. [Tr. 166, 190, 289-90, 294]. The ALJ found that the Plaintiff's "situational depression causes no more than mild functional limitations," and the record evidence supports this finding. [Tr. 19]. The fact that the ALJ separately considered each of the Plaintiff's non-severe impairments and made the explicit finding that these impairments, when considered with the Plaintiff's severe impairments, did not meet or equal a listing, establishes that the ALJ properly considered the combined effect of the Plaintiff's

impairments.  See Wagner v. Apfel, NO. 98-2260, 1999 WL 1037573, at *5

(4th Cir. Nov. 16, 1999); Smith v. Astrue, No. 2:07cv00005, 2007 WL

2821965, at *17 (W.D.Va. Sep. 28, 2007).  For these reasons, the

Plaintiff's second assignment of error is overruled.

Finally, the Plaintiff contends that the ALJ failed properly to consider

his obesity as a severe impairment in the disability determination process,

in violation of SSR 02-1p.  [Doc. 14 at 13].

An impairment is severe if the medical evidence establishes that it

significantly limits a claimant's ability to perform basic work activities.  20

C.F.R. §§404.1520(c), 416.920(c).  In finding that the Plaintiff's obesity was

not a severe impairment, the ALJ relied on the fact that Dr. Whitworth,

despite diagnosing the Plaintiff as obese, never determined that the

Plaintiff had any resulting functional restrictions but rather assessed full

muscle strength and good range of motion.  [Tr. 166, 232].  Further, Dr.

Whitworth found that the Plaintiff had normal muscle bulk and tone and

intact cranial nerves and sensation, [Tr. 166-67], a finding corroborated by

Dr. Frank, who also found that the Plaintiff had intact muscle tone.  [Tr.

178-79].[1]

---

[1]The fact that Dr. Whitworth later submitted a letter opining that the Plaintiff "is
disabled from working any job due to his coronary artery disease, elevated cholesterol,

Even though he concluded that the Plaintiff's obesity was a non-severe impairment, the ALJ considered this impairment throughout the sequential evaluation process in accordance with SSR 02-1p. [Tr. 18]. While the Plaintiff argues that the limiting effects of his obesity should have been considered in conjunction with the limitations from his other impairments, the Plaintiff does not identify, nor does the record contain, any evidence demonstrating how the Plaintiff's obesity exacerbated any of his other impairments. For these reasons, the Plaintiff's third assignment of error is overruled.

For the foregoing reasons, the Court concludes that the Commissioner applied the correct legal standards and that there is substantial evidence to support the Commissioner's determination that the Plaintiff is not disabled within the meaning of the Social Security Act.

---

diabetes, obstructive sleep apnea and morbid obesity" [Tr. 257] does not change this result. Dr. Whitworth's opinion of disability is simply conclusory and is not supported by the objective medical findings in his own records. See Craig, 76 F.3d at 590 (rejecting treating physician's conclusory opinion where physician's own medical records did not confirm his determination of disability).

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's

Motion for Judgment on the Pleadings [Doc. 13] is **DENIED**; the

Defendant's Motion for Summary Judgment [Doc. 15] is **ALLOWED**; and

the Commissioner's decision is hereby **AFFIRMED**.

 **IT IS FURTHER ORDERED** that this case is **DISMISSED WITH**

**PREJUDICE**, and judgment shall issue simultaneously herewith.

 **IT IS SO ORDERED.**

Signed: August 18, 2008

Martin Reidinger
United States District Judge